No. 24-10369

# In the United States Court of Appeals for the Fifth Circuit

GUADALUPE FRIAS; SHANNON MCKINNON,

Plaintiffs-Appellees,

v.

GENARO HERNANDEZ,

Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Texas,
No. 3:23-CV-550, Hon. Sidney A. Fitzwater, District Judge, presiding.

## APPELLEES'
## PETITION FOR REHEARING EN BANC

HENLEY & HENLEY,
P.C.
Geoff J. Henley
(TX 00798253)
2520 Fairmount St.,
Suite 200
Dallas, TX 75201
(214) 821-0222
ghenley@
henleylawpc.com

INSTITUTE FOR JUSTICE
Anya Bidwell
(TX 24101516)
Patrick Jaicomo
(MI P75705)
901 North Glebe Rd.,
Suite 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
pjaicomo@ij.org

INSTITUTE FOR JUSTICE
Marco Vasquez Jr.
(TX 24115892)
816 Congress Ave.,
Suite 970
Austin, TX 78701
(512) 480-5936
mvasquez@ij.org

*Counsel for Plaintiffs-Appellees*

## Certificate of Interested Persons

## No. 24-10369; *Frias, et al. v. Hernandez*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualifications or recusals.

1. <u>Plaintiffs-Appellees</u>

   Guadalupe Frias and Shannon McKinnon

2. <u>Defendant-Appellant</u>

   Genaro Hernandez

3. <u>Counsel for Plaintiffs-Appellees</u>

   Anya Bidwell, Patrick Jaicomo, and Marco Vasquez Jr.
   INSTITUTE FOR JUSTICE

   Geoff J. Henley
   HENLEY & HENLEY, P.C.

4. <u>Counsel for Defendant-Appellant</u>

   John Cheves Ligon and Nicholas Dane Palmer
   CITY ATTORNEY'S OFFICE FOR THE CITY OF DALLAS

Dated: August 18, 2025

/s/ Anya Bidwell
*Counsel for Plaintiffs-Appellees*

## Rule 40(b)(2) Statement

As Judge Oldham explained in his panel concurrence in this case, there is "no basis for saying that the denial of a state-law immunity justifies immediate appeal under the Supreme Court's current [collateral-order] doctrine." Op.15 (Oldham, J., concurring). As a result, "the panel decision conflicts with a decision of the United States Supreme Court." *See* Fed. R. App. P. 40(b)(2)(B). Specifically, this Court's extension of the collateral-order doctrine (which allows certain issues to be appealed before final judgment) to state-law immunities does not align with the following Supreme Court cases:

- *Microsoft Corp. v. Baker*, 582 U.S. 23 (2017);

- *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009);

- *Will v. Hallock*, 546 U.S. 345 (2006); and

- *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994).

This proceeding also involves a question "of exceptional importance"—namely, whether state law alone can expand federal appellate jurisdiction under the collateral-order doctrine. *See* Fed. R. App. P. 40(b)(2)(D); *see also* Op.14 (Oldham, J., concurring).

This Court should grant the petition for rehearing en banc.

# Table of Contents

Page

Certificate of Interested Persons .............................................. i

Rule 40(b)(2) Statement .......................................................... ii

Table of Authorities................................................................. v

Statement of the Issue Meriting En Banc Review ................................. 1

Introduction................................................................................ 1

Statement of Necessary Facts................................................... 3

Statement of Proceedings......................................................... 5

Argument and Authorities ....................................................... 7

I.    Expanding the collateral-order doctrine outside of Supreme Court rulemaking is disfavored................................. 8

    A.    The Supreme Court has recognized only a narrow set of collateral orders that enlarge appellate jurisdiction ......... 9

    B.    State-law immunities are not a part of the Supreme Court's collateral-review canon...................................... 10

        i.    States cannot control federal jurisdiction ................... 10

        ii.    Not all immunities from suit warrant an expansion of federal jurisdiction ...................................... 12

    C.    The Supreme Court made clear that new avenues for immediate appeal must be furnished through its rulemaking..................................................... 15

II.  The  current  approach  leads  to  outcome-determinative differences among circuits...........................................16

Conclusion .................................................................18

Certificate of Service ..................................................20

Certificate of Compliance ..........................................21

# Table of Authorities

## Cases

*Amisi v. Brooks*,
93 F.4th 659 (4th Cir. 2024) ............................................................ 18

*Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*,
136 F.4th 549 (5th Cir. 2025) ......................................................... 11

*Budinich v. Becton Dickinson & Co.*,
486 U.S. 196 (1988) ......................................................................... 11

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ............................................................. 1, 8, 16

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ...................................................... 1, 3, 7–13

*Dupree v. Younger*,
598 U.S. 729 (2023) ........................................................................... 9

*Fed. Bureau of Investigation v. Fikre*,
601 U.S. 234 (2024) ........................................................................... 7

*Gulfport Energy Corp. v. Fed. Energy Regul. Comm'n*,
41 F.4th 667 (5th Cir. 2022) ............................................................. 7

*Hampton v. California*,
83 F.4th 754 (9th Cir. 2023) ........................................................... 12

*Harris v. City of Newark*,
271 A.3d 1250 (N.J. 2022) ............................................................. 15

*Hinds County v. Perkins*,
64 So. 3d 982 (Miss. 2011) ............................................................. 14

*Kilty v. Weyerhaeuser Co.*,
    758 F. App'x 530 (7th Cir. 2019) .......................................... 18

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) ................................................ 7

*McFadden v. Olesky*,
    517 S.W.3d 287 (Tex. App. 2017) ........................................ 6

*Medina v. Planned Parenthood S. Atl.*,
    145 S. Ct. 2219 (2025) ........................................................ 3

*Microsoft Corp. v. Baker*,
    582 U.S. 23 (2017) ..................................................... 10, 15

*Midland Asphalt Corp. v. United States*,
    489 U.S. 794 (1989) .......................................................... 13

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ..................................................... 2, 12

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ............................... 2, 9–10, 15–16

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982) ..................................................... 2, 12

*Reg'l Transp. Comm'n v. Wang*,
    131 Nev. 1337 (Nev. Sept. 28, 2015) ................................ 14

*Sorey v. Kellett*,
    849 F.2d 960 (5th Cir. 1988) ...................................... 11, 17

*State Taxicab Auth. v. Greenspun*,
    862 P.2d 423 (Nev. 1993) .................................................. 14

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................. 7

*Swint v. Chambers Cnty. Comm'n*,
514 U.S. 35 (1995) .............................................9–10, 15–16

*United States v. Wampler*,
624 F.3d 1330 (10th Cir. 2010) .................................... 13, 16

*Vaughn v. First Transit, Inc.*,
206 P.3d 181 (Or. 2009) ..................................................... 16

*Will v. Hallock*,
546 U.S. 345 (2006) ................................................. 8–10, 13

**Statutes, Rules and Regulations**

28 U.S.C. § 1291 ................................................ 1, 8–9, 11, 13

28 U.S.C. § 1292(e) ............................................................ 15

28 U.S.C. § 1367 .................................................................. 6

28 U.S.C. § 2072(c) ........................................................... 15

42 U.S.C. § 1983 .................................................................. 5

Or. Rev. Stat. § 30.265(1), (3) .......................................... 16

Tex. Civ. Prac. & Rem. Code § 101.106(f) ....................... 5, 11

**Other Authorities**

Bryan A. Garner,
*The Law of Judicial Precedent* (2016) .......................... 10–11

## Statement of the Issue Meriting En Banc Review

Does the collateral-order doctrine's narrow and selective expansion of federal appellate jurisdiction apply to the denial of state-law immunities?

## Introduction

Since 1891, courts of appeals have had jurisdiction to hear only "final decisions of the district courts[.]" 28 U.S.C. § 1291; Op.12 (Oldham, J., concurring). In 1949, however, the Supreme Court created the collateral-order doctrine as a "practical rather than a technical construction" of the "final decision" rule. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–47 (1949). Under this doctrine, the Supreme Court extended appellate jurisdiction to "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, . . . nonetheless be treated as final." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (cleaned up).

This Court should grant en banc review because the Supreme Court has never extended the narrow collateral-order doctrine to denials of state-law immunities, and nothing in its jurisprudence indicates that it would. As the Supreme Court has explained, in cases like this one that involve an issue never recognized as a part of the collateral-order canon,

*see* Part IA, *infra*, at 9–10, "further avenue[s] for immediate appeal . . . should be furnished, if at all, through [Supreme Court] rulemaking[,]" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009); *see also* Part IC, *infra*, at 15–16. No feature of state-law immunity justifies a departure from this restrictive standard. *See* Part IB, *infra*, at 10–15.

If anything, per Supreme Court jurisprudence, federal courts cannot expand jurisdiction to immediately review the denial of a state-law immunity. First, states cannot control the scope of federal jurisdiction—yet states do when the availability of interlocutory review in a federal court is determined based exclusively on whether states deem a given immunity one from suit (immediately appealable) or from liability (not immediately appealable). Second, even if the state-law immunity is indeed from suit, unlike a federal immunity under *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), or *Mitchell v. Forsyth*, 472 U.S. 511 (1985), it does not derive from a federal statute or the federal constitution and therefore is not sufficiently "important" to warrant a departure from the traditional "final decision rule." *Digital Equip.*, 511 U.S. at 872, 878. Nothing demonstrates this better than the fact that, at the state level, only twenty states permit an interlocutory appeal as of right for one or more state

immunities. If state-law immunities are not "important" enough to be immediately appealable in state courts, that must be especially true in federal courts.

Nonetheless, this Court, like others, has extended its jurisdiction to reach state-immunity denials in an interlocutory posture, making the ground ripe for circuit splits based on whether a state categorizes an immunity as one from suit or liability. *See* Part II, *infra*, at 16–18. Regardless of categorization, this Court should grant this petition and remove state immunities from the reach of interlocutory review. The Supreme Court has already functionally done so. But if a majority of the en banc court disagrees, its judges should write separately to urge the Supreme Court's clarification. *See, e.g.*, *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2228 (2025) (pointing to concerns expressed in such writings by circuit-court judges as a reason for granting certiorari).

## Statement of Necessary Facts

Appellee Shannon McKinnon owns a bar in Dallas called "The Green Elephant" at which Appellee Guadalupe Frias—also a Kaufman County constable—provides security. Op.2. In August 2019, there was a shooting outside The Green Elephant. *Id.* McKinnon and Frias called the

3

police and recovered shell casings they found in the parking lot, which they promptly turned over. *Id.*

The Stainback Organization, a Texas real estate firm, is one of The Green Elephant's neighbors. Op.3–4. To be rid of its unwanted neighbor, Stainback employee and Dallas Police Department ("DPD") detective Appellant Genaro Hernandez inserted himself into the investigation of the August 2019 shooting and caused McKinnon and Frias to be baselessly prosecuted. *Id.* at 1–4. As DPD's employee specializing in property crimes, Hernandez does not investigate violent crimes. *Id.* at 3.

Concealing his Stainback employment, Hernandez first unsuccessfully approached the DPD Special Investigation Unit ("SIU") with footage from the night of the shooting, showing Frias and McKinnon collecting the shell cases. Op.2–3. But SIU determined that no crime had been committed. *Id.* at 3. Undeterred, Hernandez next submitted false and misleading statements to the Dallas County District Attorney and DPD, incriminating Frias and McKinnon. *Id.* These statements led to the prosecution of Frias and McKinnon for tampering with evidence. *Id.*

Once the Hernandez-Stainback relationship was disclosed at Frias's trial, the charges against both were dropped. Op.3–4.

## Statement of Proceedings

Frias and McKinnon sued Hernandez in federal court for the bogus charges. Op.1–2. They brought federal constitutional claims against Hernandez under 42 U.S.C. § 1983 and tort claims against Hernandez under Texas law. *Id.* at 4.

Claiming immunity, Hernandez moved to dismiss all claims. Op.4. The district court granted Hernandez qualified immunity for a federal malicious-prosecution claim, ROA.243, but allowed a federal false-arrest claim to proceed, ROA.231. The district court also denied Hernandez immunity for all the state claims. ROA.249. For purposes of assessing immunity under the Texas Tort Claims Act, which makes a lawsuit against a government employer the exclusive remedy for a public employee's conduct within the scope of his employment, Tex. Civ. Prac. & Rem. Code § 101.106(f), the court held that it "remain[ed] unclear" at the pleading stage whether Hernadez could carry his burden to establish that his actions were taken in his official capacity. ROA.244, 248.

Hernandez immediately filed an interlocutory appeal for the partial denial of his motion to dismiss, "arguing only that the district court erred in failing to dismiss the plaintiffs' state-law claims because he is entitled

to governmental immunity under the Texas Tort Claims Act." Op.4. Accordingly, "[t]he only issue in this appeal is the denial of a state-law immunity," even though "the only reason this claim can be in federal court at all is because of the federal claims *not* in this appeal." *Id.* at 15 n.2 (Oldham, J., concurring) (citing 28 U.S.C. § 1367).

Based on a Texas Court of Appeals decision categorizing the state immunity as one from suit, not liability, the panel invoked the collateral-order doctrine to enlarge its appellate jurisdiction and reach the state-law immunity issue on interlocutory review. Op.4–5 (citing *McFadden v. Olesky*, 517 S.W.3d 287, 294–95 (Tex. App. 2017)). The panel then granted Hernandez state-law immunity because his "questionable conduct . . . fell within the heartland of his role as a detective." *Id.* at 2.

In a concurring opinion, Judge Oldham questioned this Court's "longstanding extension of the collateral-order doctrine to state-law immunities" and offered multiple reasons to reconsider circuit precedent. Op.12–17 (Oldham, J., concurring). In Judge Oldham's view, there is "no basis for saying that the denial of a state-law immunity justifies immediate appeal under the Supreme Court's current doctrine." *Id.* at 15. Appellees agree and move the en banc Court for rehearing.

## Argument and Authorities

It is axiomatic that "[j]urisdiction comes first." *Gulfport Energy Corp. v. Fed. Energy Regul. Comm'n*, 41 F.4th 667, 676 (5th Cir. 2022). "Without jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Federal courts have an independent obligation to assure themselves of jurisdiction at each stage of a case, *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 244 (2024), including whether there is appellate jurisdiction under the collateral-order doctrine, *see Digital Equip.*, 511 U.S. at 869 n.3; *Leonard v. Martin*, 38 F.4th 481, 485 (5th Cir. 2022).

Supreme Court jurisprudence on the collateral-order doctrine recognizes no basis for immediate appeal of the denial of a state-law immunity. First, the Supreme Court disfavors expanding the collateral-order doctrine outside of its own rulemaking, especially where, like here, the right to immunity does not originate from the federal constitution or statutes (ironically, even most states do not permit an immediate appeal as of right of the denial of immunity under state law). Second, departing from the path outlined by the Supreme Court leads to inconsistent results

in circuit courts, depending on whether a particular state categorizes the immunity as one from suit or from liability.

## I.    Expanding the collateral-order doctrine outside of Supreme Court rulemaking is disfavored.

In *Cohen*, the Supreme Court extended appellate jurisdiction to "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, . . . nonetheless be treated as final." *Digital Equip.*, 511 U.S. at 867 (cleaned up).

The Supreme Court has "not mentioned applying the collateral order doctrine recently without emphasizing its modest scope." *Will v. Hallock*, 546 U.S. 345, 350 (2006). The Court has been strict about limiting interlocutory appellate jurisdiction to the "narrow and selective" classes of orders it has previously recognized. *Id.* State-law immunities have never been a part of any such class, and rightfully so.

First, state courts cannot define the scope of federal jurisdiction, and second, state-law immunities do not "rise to the level of importance needed for recognition under § 1291." *Digital Equip.*, 511 U.S. at 878. Moreover, as the Supreme Court has explained, any further extension of the collateral-order doctrine is to be accomplished through its Congressionally granted rulemaking authority. By allowing such

appeals, the Fifth Circuit and its sister courts are acting in contravention of the principles laid out by the Supreme Court.

## A. The Supreme Court has recognized only a narrow set of collateral orders that enlarge appellate jurisdiction.

Parties are normally entitled only to a single appeal—after the entry of a final judgment. *Dupree v. Younger*, 598 U.S. 729, 734 (2023). While interlocutory orders—"those that do not dispose of the whole case"—"are typically not immediately appealable under § 1291," *id.*, the Supreme Court, in 1949, interpreted the words "final decisions" in Section 1291 to encompass some "collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Mohawk*, 558 U.S. at 106 (cleaned up). To qualify as immediately appealable under this collateral-order doctrine, a decision must: (1) be "conclusive"; (2) "resolve important questions separate from the merits"; and (3) be "effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995).

This doctrine is narrow. *E.g.*, *Will*, 546 U.S. at 350 ("narrow and selective"); *Digital Equip.*, 511 U.S. at 868 ("the 'narrow' exception should . . . never be allowed to swallow the general rule"). Over the last two decades, the Supreme Court has consistently rebuffed numerous

attempts to extend collateral review to new contexts. *See, e.g.*, *Digital Equip.*, 511 U.S. at 884 (settlement agreement); *Swint*, 514 U.S. at 43 (denial of summary judgment); *Will*, 546 U.S. at 355 (FTCA judgment bar); *Mohawk*, 558 U.S. at 114 (discovery orders revealing privileged information); *Microsoft Corp. v. Baker*, 582 U.S. 23, 37 (2017) (voluntary dismissal). It prefers instead for its rulemaking to be the vehicle for further extension. *See* Part IC, *infra*, at 15–16.

**B.    State-law immunities are not a part of the Supreme Court's collateral-review canon.**

"[T]he Supreme Court has never held that state-law immunities trigger the collateral-order doctrine," Op.14 (Oldham, J., concurring), and for good reasons. First, states cannot control federal jurisdiction by defining an immunity to be from suit and not from liability. Second, even if a state-law immunity were from suit, whether a defendant is entitled to it isn't a sufficiently important interest to warrant a departure from the normal rule. *See Digital Equip.*, 511 U.S. at 878.

*i.    States cannot control federal jurisdiction.*

Federal courts cannot extend the collateral-order doctrine based solely on state law. "[F]ederal courts have both the authority and obligation to determine their own jurisdiction and powers, including their

jurisdiction under Article III." Bryan A. Garner, *The Law of Judicial Precedent*, § 65, at 557 (2016). "On all such issues, the statutes and judicial precedents of a state are nugatory." *Id.*; *see also Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025).

Yet, this Court has allowed states to do just that by categorizing a state immunity as either from suit (immediately reviewable) or from liability (not immediately reviewable). *See, e.g.*, Op.4–5 (explaining that because Texas courts interpret "§ 101.106(f) . . . [to] render[] officers 'immune from suit[,]' . . . [t]he denial of state-law immunity in this case is . . . immediately appealable" in a federal court). That's true even in cases like *Sorey v. Kellett*, where Mississippi procedural rules did not permit an interlocutory appeal in state courts, but this Court still heard it. 849 F.2d 960, 962 (5th Cir. 1988).

But, as the Supreme Court has explained, it is up to federal courts to determine whether a law provides immunity from suit. In fact, Section 1291 *requires* them to do that, and without the benefit of "borrow[ing] or incorporat[ing] state law." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988); *see also Digital Equip.*, 511 U.S. at 873 (explaining that Section 1291 requires appellate courts to view attempts to recharacterize

something as an immunity or a right to not stand trial "with skepticism, if not a jaundiced eye" (citation omitted)). By outsourcing this determination to state courts, federal courts abdicate this responsibility. Worse, they leave their caselaw vulnerable to shifts in state law, as the Ninth Circuit's recent experience shows. *See Hampton v. California*, 83 F.4th 754, 772–73 (9th Cir. 2023) ("Our prior holding that section 820.2 is an immunity from suit has thus been undercut by an intervening decision from a state court of last resort in such a way that the cases are clearly irreconcilable, making that holding effectively overruled by the California Supreme Court.") (cleaned up).

ii. *Not all immunities from suit warrant an expansion of federal jurisdiction.*

Even if a state-law immunity is an immunity from suit, nothing in Supreme Court jurisprudence suggests that federal courts are allowed to expand jurisdiction in order to immediately review its denial. True, the Supreme Court has allowed interlocutory review in immunity cases such as *Nixon* and *Mitchell* because some federal immunities grant government defendants a right "not to stand trial or face the other burdens of litigation," and thus are "an *immunity from suit* rather than a mere defense to liability[.]" *Mitchell*, 472 U.S. at 526. But that doesn't

mean that denials of state-law immunities are "immediately appealable under the collateral-order doctrine." Op.4–5.

Only "orders denying *certain* immunities are strong candidates for prompt appeal under § 1291." *See Digital Equip.,* 511 U.S. at 871 (emphasis added). To qualify, an immunity must "rise to the level of importance needed for recognition under § 1291." *Id.* at 878.

State-law immunities do not rise to such a level of importance. First, unlike with federal immunities, there is no federal statutory or constitutional guarantee regarding them, and the Supreme Court has all but held that only those rights "originating in the Constitution or statutes" warrant immediate appeals under the collateral-order doctrine. *Digital Equip.*, 511 U.S. at 879; *see also Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989); *accord United States v. Wampler*, 624 F.3d 1330, 1332, 1336 (10th Cir. 2010) (Gorsuch, J.). Even in *Will v. Hallock*, where the Court acknowledged the existence of "a State's dignitary interests" as a "particular value of a high order," those interests arose out of the Eleventh Amendment. 546 U.S. at 352.

Second, even at the state level, there is frequently no right to an immediate appeal on the state-law immunity question. By our count, only

twenty states allow an interlocutory appeal as of right regarding at least one state-law immunity. For the other thirty states, state-law immunities do not warrant an expansion of their appellate jurisdiction.[1]

As the Supreme Court of Nevada explained when denying interlocutory review on the question of governmental immunity, immediate appeals of state-immunity denials are not allowed because:

> Interlocutory appeals cause delay, expense and disruption. Adopting the collateral order doctrine would require this court to extensively screen appeals from interlocutory orders to determine whether this court has jurisdiction. Jurisdiction lines would become unfocused and uncertain. This in turn could result in a proliferation of premature appeals. These burdens would outweigh any possible benefits that could result from adoption of the collateral order doctrine.

*Reg'l Transp. Comm'n v. Wang*, 131 Nev. 1337, at *1 (Nev. Sept. 28, 2015) (unpublished) (quoting *State Taxicab Auth. v. Greenspun*, 862 P.2d 423, 425 (Nev. 1993)); *see also Hinds County v. Perkins*, 64 So. 3d 982, 987–88 (Miss. 2011) (providing similar reasons for denying interlocutory

---

[1] These thirty states either (a) through court decisions, have not recognized interlocutory review as of right for at least one state-law immunity (eleven states) or (b) based on our review of relevant state court decisions, state statutes, and state rules, have not authorized interlocutory review as of right for state-law immunities (nineteen states). Per rules governing appendices and considering word limit, counsel for Appellees did not include the relevant state-law authorities in connection with this petition. Counsel, however, can provide that list at the request of this Court or in connection with future briefing.

review of official immunity); *Harris v. City of Newark*, 271 A.3d 1250, 1260–61 (N.J. 2022) (same but on state qualified immunity).

These rationales apply with an even greater force to federal courts considering state-law immunities. As Judge Oldham explained: "If a particular state-law immunity is not important enough for the State's own courts to hear an immediate appeal, it cannot be of such overwhelming importance that it demands immediate appeal in federal court." Op.16 n.3 (Oldham, J., concurring). That's not only intuitively true but also helps explain why the Supreme Court has never extended the collateral-order doctrine to the denial of state-law immunities.

## C. The Supreme Court made clear that new avenues for immediate appeal must be furnished through its rulemaking.

As the Supreme Court has repeatedly recognized, rulemaking procedures—not case-by-case judicial decision-making—are now the proper vehicle for extending interlocutory review. *See Microsoft*, 582 U.S. at 39–40; *Mohawk*, 558 U.S. at 113–14; *Swint*, 514 U.S. at 48. That's because in the early 1990s, Congress authorized the Supreme Court to create rules defining "when a ruling of a district court is final for the purposes of appeal," 28 U.S.C. § 2072(c), and rules "to provide for an appeal of an interlocutory decision to the courts of appeals," *id.* § 1292(e).

These statutes "warrant[] the Judiciary's full respect." *Swint*, 514 U.S. at 48. "[A]ny request for the expansion of the *Cohen* doctrine should be directed to the rules committee" rather than this Court. *Wampler*, 624 F.3d at 1338 (Gorsuch, J.); *see also Mohawk*, 558 U.S. at 115 (Thomas, J., concurring in part and concurring in the judgment) (similar).

In the meantime, to avoid conflicts with Supreme Court jurisprudence and to better police its jurisdictional borders prescribed by Congress, this Court should reexamine its precedent granting interlocutory review to appeals from denials of state-law immunities.

## II. The current approach leads to outcome-determinative differences among circuits.

Allowing state law to dictate federal-court jurisdiction on this issue leads to inconsistent results across circuit courts.

In Oregon, as in Texas, for example, if a suit is filed against an employee acting within the scope of employment, that suit is against the public body and not against the individual employee. Or. Rev. Stat. § 30.265(1), (3). Oregon state courts, unlike Texas state courts, however, do not interpret that statute to be an immunity from suit. *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 184 n.2 (Or. 2009). As a result, if a federal district court in Oregon determined that the statute did not apply to an

employee because he acted outside of the scope of employment, this employee, unlike Hernandez here, would not be able to immediately appeal this determination to the Ninth Circuit. That's a circuit split with an outcome-determinative result, in the sense that Frias and McKinnon, had the injury occurred in Oregon and not in Texas, would now be litigating their claims in district court instead of having them dismissed by a federal court of appeals.

Interestingly, Mississippi, like Texas, considers its exemption from liability provision under the Mississippi Tort Claims Act to be an immunity from suit. *Perkins*, 64 So. 3d at 986. But in Mississippi (or Louisiana, *see* n.1, *supra*, at 14), unlike in Texas, immediate appeals of state-immunity denials are not permitted as of right. So, even though a state-immunity denial like the one at issue here could be immediately appealed to the Fifth Circuit, *see Sorey*, 849 F.2d at 962, it could *not* be immediately appealed to a Mississippi appellate court.

Disagreements between state courts on whether a state law provides immunity from suit or a mere defense to liability arise in other state-law contexts as well. For example, Kentucky and Georgia disagree on the role immunity plays in states' worker compensation statutes. In

Kentucky, such a statute provides immunity from suit and thus is immediately appealable. In Georgia, it provides immunity from liability, which is not immediately appealable, leading to an interlocutory review being allowed in one federal circuit but not the other. *Kilty v. Weyerhaeuser Co.*, 758 F. App'x 530, 532 (7th Cir. 2019) (unpublished) (citing Sixth and Seventh Circuit precedent); *see also Amisi v. Brooks*, 93 F.4th 659, 671 (4th Cir. 2024) ("The exclusivity provision in the Virginia's Workers' Compensation Act provides total immunity from suit.").

To resolve these arbitrary differences in outcomes, circuit courts should remove denials of state-law immunities from the reach of the collateral-order doctrine regardless of how these immunities are categorized. That would not only make the federal-court jurisprudence consistent across the board, but would also align it more faithfully with principles outlined by the Supreme Court. If members of this Court do not consider the guidance of the Supreme Court to be sufficient, we respectfully ask that they write separately, requesting the Supreme Court's more specific guidance.

## Conclusion

The Court should grant the petition for rehearing en banc.

Respectfully submitted,

/s/ Anya Bidwell

INSTITUTE FOR JUSTICE
Anya Bidwell (TX 24101516)
Patrick Jaicomo (MI P75705)
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
abidwell@ij.org
pjaicomo@ij.org

INSTITUTE FOR JUSTICE
Marco Vasquez Jr. (TX 24115892)
816 Congress Ave., Suite 970
Austin, TX 78701
(512) 480-5936
mvasquez@ij.org

&

HENLEY & HENLEY, P.C.
Geoff J. Henley (TX Bar No. 00798253)
2520 Fairmount St., Suite 200
Dallas, TX 75201
P: (214) 821-0222
F: (214) 821-0124
ghenley@henleylawpc.com

## Certificate of Service

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on August 18, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

Dated: August 18, 2025 <u>s/ Anya Bidwell</u>

## Certificate of Compliance

1. This brief complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because this brief was produced using a computer and contains 3,885 words, excluding the items listed in Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Century font with 13-point Century footnotes.

Dated: August 18, 2025    <u>s/ Anya Bidwell</u>

# United States Court of Appeals for the Fifth Circuit

No. 24-10369

United States Court of Appeals
Fifth Circuit

**FILED**

July 3, 2025

Lyle W. Cayce
Clerk

GUADALUPE FRIAS; SHANNON MCKINNON,

*Plaintiffs—Appellees*,

*versus*

GENARO HERNANDEZ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-550

Before JONES, OLDHAM, *Circuit Judges* and HENDRIX, *District Judge.**

EDITH H. JONES, *Circuit Judge*:

Genaro Hernandez is a Dallas Police Department ("DPD") detective by day and private employee of the Stainback Organization by night. In August 2019, a shooting occurred outside the Stainback Organization's neighbor, a Dallas bar called The Green Elephant. Detective Hernandez allegedly inserted himself into the subsequent criminal investigation at the behest of his private employer to pursue a slew of bogus charges against

---

* District Judge of the Northern District of Texas, sitting by designation.

No. 24-10369

plaintiff-appellees, the owner of and a hired security guard for The Green Elephant, neither of whom had anything to do with the shooting. Even if his questionable conduct stemmed from an ulterior motive to benefit the Stainback Organization, Hernandez's acts fell within the heartland of his role as a detective. Because Texas law affords state actors broad immunity for acts objectively within the scope of their employment, regardless of their subjective intent, Hernandez is immune from suit. The district court's judgment denying dismissal of the plaintiffs' state-law claims must be REVERSED WITH INSTRUCTIONS TO DISMISS, and the case is REMANDED for further proceedings as to the plaintiffs' remaining federal claim.

I.

Plaintiff Shannon McKinnon owns The Green Elephant, a bar in Dallas. Plaintiff Guadalupe Frias is a Kaufman County constable who provides private security for The Green Elephant. In August 2019, a shooting occurred outside The Green Elephant. Plaintiffs called the police in the minutes after the shooting. Waiting for officers to arrive, plaintiffs searched the parking lot of The Green Elephant for evidence and picked up shell casings they had found. Police did not come to The Green Elephant until approximately one week later, when an officer took custody of the shell casings.

The plaintiffs' complaint alleges that, in the days following the shooting, Detective Genaro Hernandez of the DPD was "somehow" assigned to "follow up" on an investigation of criminal mischief related to damage to the Stainback Organization's property. Hernandez's method of assignment to the case was "abnormal," because he was neither dispatched to respond to the shooting nor assigned to the case by a supervisor. Nevertheless, Hernandez and another detective retrieved surveillance

footage from a Stainback representative showing that the plaintiffs collected shell casings the night of the shooting. Hernandez took the footage to the DPD Special Investigation Unit ("SIU"), which handles incidents related to firearms. After reviewing the footage and related information, SIU investigators "found no criminal offense pertaining to [p]laintiffs" and "did not file any charges related to the shell casings[.]"

Despite the SIU's findings, the complaint alleges that Hernandez circumvented the DPD's charging process and brought the case directly to the Dallas County District Attorney's Office for prosecution. Hernandez did so even though he "knew that the SIU would not pursue charges" and that no evidence linked plaintiffs to the shooting. To that end, the complaint alleges that Hernandez submitted "reports and other writings" containing false or misleading statements and omissions to the DPD and Dallas County District Attorney. The reports failed to mention (1) the SIU investigation that found plaintiffs had committed no crime and recommended no charges, (2) plaintiffs' innocence of the shooting itself, and (3) Hernandez's conflict of interest arising from his employment relationship with the Stainback Organization. As a result of the reports, McKinnon and Frias were indicted for the felony offense of tampering with evidence in June 2021.

In March 2022, Frias's case proceeded to trial. At trial, Hernandez's "ulterior motives" for investigating and pursuing charges against the plaintiffs came to light. While Hernandez worked during the week as a detective in the property crimes unit of the DPD, he spent his weekends working for the Stainback Organization. He was first told of the shooting by an individual associated with the Stainback Organization and "secretly inserted himself into the investigation." Hernandez sought to keep this connection secret and never informed the DPD of his employment relationship with the Stainback Organization. Hernandez "simply had another objective in mind" when investigating plaintiffs, ostensibly to benefit

No. 24-10369

the Stainback Organization, which wanted "to be rid of" its neighbor, The Green Elephant. When Hernandez's relationship with the Stainback Organization was disclosed during Frias's trial, the District Attorney's Office dropped the case "in the interest of justice." Charges were also dropped against McKinnon.

Plaintiffs then sued Hernandez. Their complaint alleges federal claims under 42 U.S.C. § 1983 for false arrest and malicious prosecution and state-law claims for malicious prosecution, false imprisonment, and civil conspiracy. Hernandez moved to dismiss all the claims against him. The district court granted Hernandez's motion to dismiss the federal malicious-prosecution claim based on qualified immunity. But the court denied his motion to dismiss the federal false-arrest claim, which remains pending. The court denied his motion to dismiss the three state-law claims. Hernandez now appeals, arguing only that the district court erred in failing to dismiss the plaintiffs' state-law claims because he is entitled to governmental immunity under the Texas Tort Claims Act.

II.

The denial of state-law immunity in cases permissibly brought in federal court "is a collateral order, which this court has jurisdiction to review." *Smith v. Heap*, 31 F.4th 905, 910 (5th Cir. 2022). "[A]n order denying [] immunity under state law is immediately appealable as a 'final decision,' provided that 'the state's doctrine of [] immunity . . . provides a true immunity from suit and not a simple defense to liability.'" *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996) (quoting *Sorey v. Kellett*, 849 F.2d 960, 962 (5th Cir. 1988)). When applicable, § 101.106(f) of the Texas Tort Claims Act renders officers "immune from suit." *McFadden v. Olesky*, 517 S.W.3d 287, 294–95 (Tex. App.—Austin 2017, pet. denied). The denial of state-law immunity in this case is therefore immediately appealable under the

No. 24-10369

collateral-order doctrine. *See Wilkerson v. Univ. of N. Tex. ex rel. Bd. of Regents*, 878 F.3d 147, 154 (5th Cir. 2017).

The district court's partial denial of the motion to dismiss is reviewed "*de novo*, accepting all well-pled facts as true and viewed in the light most favorable to the plaintiffs." *Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (citation omitted).

III.

Section 101.106(f) of the Texas Tort Claims Act "affords state employees governmental immunity." *Wilkerson*, 878 F.3d at 159. "When it applies, § 101.106(f) 'mandates[] plaintiffs to pursue lawsuits against governmental units rather than their employees,' and entitles the employee 'to dismissal' of the relevant tort claim." *Id.* (internal citations omitted). The section states:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code § 101.106(f). "More succinctly, a defendant is entitled to dismissal upon proof that the plaintiff's suit is (1) based on conduct within the scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the [Texas] Tort Claims Act." *Laverie v. Wetherbe*, 517 S.W.3d 748, 752 (Tex. 2017) (citations omitted). This court may dismiss claims on

the pleadings when the facts alleged establish that the conduct at issue fell within the scope of employment. *See Heap*, 31 F.4th at 913–14.

We hold, as further explained, that Hernandez's conduct was "within the general scope of [his] employment." *Wilkerson*, 878 F.3d at 161. And it is undisputed that plaintiffs' tort claims for malicious prosecution, false imprisonment, and conspiracy "could have been brought" against the City of Dallas. *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011).

The Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5).

The Texas Supreme Court's decision in *Laverie* erected the signposts applicable here. Whether an individual acted within the scope of employment "calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Laverie*, 517 S.W.3d at 753 (citing Tex. Civ. Prac. & Rem. Code § 101.001(5)). The inquiry asks only whether "there [is] a connection between the employee's job duties and the alleged tortious conduct[.]" *Id.* "So long as it falls within the duties assigned, an employee's conduct is within the scope of employment, even if done in part to serve the purposes of the employee or a third person." *Id.* (quoting *Anderson v. Bessman*, 365 S.W.3d 119, 125–26 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). Even if a private employer "direct[s] the actions" of an employee and the employee "acts consistent with his private employer's directions . . . 'co-existing motivations do not remove an employee's actions from the scope of his [governmental] employment so long as the conduct serves a purpose of the [governmental] employer.'" *Seward v. Santander*, ___ S.W.3d ___, No.

23-0704, 2025 WL 1350133, at *9 (Tex. May 9, 2025) (citations omitted) (alterations in original).  Finally, "references to intent and purpose simply reflect that an employee whose conduct is unrelated to his job, and therefore objectively outside the scope of his employment, is engaging in conduct for his own reasons." *Laverie*, 517 S.W.3d at 754.  "This is not tantamount to a threshold requirement that government-employee defendants conclusively prove their subjective intent to establish they acted in the scope of their employment." *Id.*; *see also Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019) ("Conduct falls outside the scope of employment when it occurs 'within an independent course of conduct not intended by the employee to serve *any* purpose of the employer.'"(emphasis in original) (citations omitted)).  But "the employee's state of mind, motives and competency are irrelevant[.]" *Garza*, 574 S.W.3d at 401.[1]

"[Hernandez's] personal motivations . . . ultimately do not change h[is] job responsibilities[.]" *Laverie*, 517 S.W.3d at 755.  Hernandez acted within the scope of his employment because there is a connection between the duties of his job and his allegedly tortious conduct.  Hernandez's assignment to the case and investigation of the plaintiffs fell within the scope of his employment, even if he violated a swath of internal DPD policies by inserting himself into the investigation, concealing his conflict of interest, and acting to benefit his private employer.  Numerous Texas authorities confirm that Hernandez's "general conduct was within the scope of

---

[1] This court has similarly employed a broad standard under the statute.  "The employee's acts must be of the same *general nature* as the conduct authorized or incidental to the conduct authorized to be within the scope of employment." *Wilkerson*, 878 F.3d at 159 (emphasis in original) (citations omitted).  And the "issue is not whether the government employee had authority to commit the allegedly tortious act," or violated internal policies or procedures, but whether he was "discharging the duties generally assigned to [him]." *Id.* at 161 (citation omitted).

employment," even if the "specific act[s]" alleged in the complaint were "somehow wrongful." *Fink v. Anderson*, 477 S.W.3d 460, 470 (Tex. App.— Houston [1st Dist.] 2015, no pet.); *see also Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (in evaluating whether officers sued for assault were acting within scope of employment, generally considering act of securing an arrest instead of tort-based act of assaulting arrestee).

More specifically, "an officer's scope of employment includes . . . investigating [and] arresting[.]" *Rivera v. Garcia*, 589 S.W.3d 242, 249 (Tex. App.—San Antonio 2019, no pet.); *see also Ogg v. Dillard's Inc.*, 239 S.W.3d 409, 419 (Tex. App.—Dallas 2007, pet. denied); *Harris County v. Gibbons*, 150 S.W.3d 877, 883 n.7 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Hernandez was assigned to and did investigate criminal activity, and he took a case to the District Attorney's Office to pursue charges for tampering with evidence. Tex. Penal Code § 37.09. Indeed, the District Attorney's Office brought charges against the plaintiffs and took the case to trial. When an officer enforces "general laws," he is performing a public duty and acting within the scope of his employment. *Garza*, 574 S.W.3d at 403. Why Hernandez took certain actions during the investigation implicates his subjective intent, an inquiry that Texas law explicitly bars. *See Laverie*, 517 S.W.3d at 755. Even if the Stainback Organization "directed [Hernandez's] actions," his conduct still fell within the scope of his employment because it "serve[d] a purpose" of the DPD. *Seward*, ___ S.W.3d at ___, 2025 WL at *9.

Plaintiffs' arguments to the contrary misapply the law and precedents. They contend that Hernandez was never "lawfully assigned to do anything with respect to this matter" because he violated the DPD's case assignment policy and therefore could not have acted within the scope of his employment. This argument erroneously narrows the statutory "scope of employment," which includes "being *in or about* the performance of a task

lawfully assigned to an employee." Tex. Civ. Prac. & Rem. Code § 101.001(5) (emphasis added). The issue is not whether Hernandez was properly assigned to investigate this matter, but whether his acts were "of the same general nature as the conduct authorized or incidental to the conduct authorized" by his employment. *Laverie*, 517 S.W.3d at 753 (citation omitted). Even if Hernandez's involvement in the plaintiffs' criminal investigation, from his assignment to his charging recommendation, violated DPD internal policy, "the fact remains that [plaintiffs were] being investigated for a crime[.]" *Ogg*, 239 S.W.3d at 419; *see also Gibbons*, 150 S.W.3d at 883, 883 n.7 (off-duty officer acted within the scope of his employment when he initiated a license check because it constituted an "investigation" and a "private individual would not have had the ability to run a license check"). Conduct incidental to such an investigation is related to Hernandez's employment as a detective. *See Rivera*, 589 S.W.3d at 249. In fact, plaintiffs' injuries stem from Hernandez's misuse of his power *as a detective in the property crimes division* to bring the weight of the District Attorney's Office to bear against them. Hernandez could not facilitate such a prosecution "while acting ultra vires and in a personal capacity." *Wilkerson*, 878 F.3d at 160.

Second, Hernandez acted within the scope of his employment when he allegedly provided misleading information in affidavits and reports relevant to the charging decisions of the DPD and District Attorney's Office. Hernandez did not detail the SIU's investigation, misrepresented the plaintiffs' involvement in the shooting, and failed to disclose his conflict of interest. But preparing reports and affidavits for charging decisions is directly related to Hernandez's duty to investigate and prosecute crime. *See McFadden*, 517 S.W.3d at 297 (officers acted within the scope of their employment when preparing an arrest affidavit with false information because they "were acting in their capacities as . . . officers and discharging

No. 24-10369

the duties assigned to them"); *Donohue v. Butts*, 516 S.W.3d 578, 582 (Tex. App—San Antonio 2017, no pet.) ("falsif[ying] documents in furtherance of [a] prosecution . . . [is] conduct within the general scope of [an officer's] employment").

The plaintiffs also contend, and the district court held, that when "there is no immediate crime and the off-duty officer is protecting a private employer's property or otherwise enforcing a private employer's rules or regulations, the trier of fact determines whether the officer was acting as a public officer or as a servant of the employer." *Gibbons*, 150 S.W.3d at 882 (citations omitted). According to the court, "it remains unclear what capacity Officer Hernandez was acting in at the time he committed the alleged acts." We disagree. The complaint never alleges that Hernandez acted while "off-duty." *Gibbons*, 150 S.W.3d at 882. Nor does it allege that Hernandez was being paid by the Stainback Organization when he investigated the plaintiffs' conduct, collected evidence, brought the evidence to the SIU, or recommended charges to the District Attorney's Office. Rather, the complaint alleges that Hernandez was motivated to act by a Stainback representative and used his authority as a detective to act for the benefit of the Stainback Organization. Regardless of motive, these were acts that only a detective, not a private citizen, could undertake. *See Gibbons*, 150 S.W.3d at 883, 883 n.7; *Seward*, ___ S.W.3d at ___, 2025 WL at *9. As numerous authorities cited above demonstrate, Hernandez acted within the scope of his employment for purposes of the Texas Tort Claims Act.

IV.

We do not condone the actions of Detective Hernandez as pled, but regardless of his motives, the alleged conduct falls squarely within the scope of his employment with the Dallas Police Department. The judgment of the district court as to the plaintiffs' state-law claims is accordingly

No. 24-10369

REVERSED with instructions to Dismiss those claims, and the case is REMANDED for further proceedings on plaintiffs' remaining federal claim.

No. 24-10369

Andrew S. Oldham, *Circuit Judge*, concurring:

I fully concur in the majority's excellent opinion. But I am troubled by our court's longstanding extension of the collateral-order doctrine to state-law immunities.

I

In 1891, Congress created the courts of appeals and granted them jurisdiction over "final decision[s]." Evarts Act, ch. 517, § 6, 26 Stat. 826, 828 (1891); *see also* Act of June 25, 1948, ch. 83, § 1291, 62 Stat. 929, 929 (codified at 28 U.S.C. § 1291) (changing the language to "final decisions"). About 60 years later, the Supreme Court offered an interpretation of the finality requirement that has since become known as the collateral-order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The collateral-order doctrine teaches that decisions are final and thus appealable if they are "conclusive," "resolve important questions separate from the merits," and are "effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quotation omitted).

The Supreme Court has emphasized that the collateral-order doctrine is not expansive. *See Cohen*, 337 U.S. at 546 (explaining that only a "small class" of decisions that are not final judgments are immediately appealable). And the Court has reiterated this point in recent years: "In case after case in year after year, the Supreme Court has issued increasingly emphatic instructions that the class of cases capable of satisfying this 'stringent' test should be understood as 'small,' 'modest,' and 'narrow.'" *United States v. Wampler*, 624 F.3d 1330, 1334 (10th Cir. 2010) (Gorsuch, J.) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995); *Will v. Hallock*, 546 U.S. 345, 350 (2006); *Mohawk*, 558 U.S. at 113). The strength of these instructions

No. 24-10369

is hard to overstate. *See, e.g.*, *Will*, 546 U.S. at 350 ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope," and "we have meant what we have said. . . ."); *Mohawk*, 558 U.S. at 113 ("[W]e reiterate that the class of collaterally appealable orders must remain narrow and selective in its membership." (quotation omitted)).

The Supreme Court has pointed to rulemaking, rather than judicial decisions, as the ordinary method to permit immediate appeals of classes of orders not already recognized by the Court. In 1990, Congress authorized the Supreme Court to use rulemaking to "define when a ruling of a district court is final" under § 1291. 28 U.S.C. § 2072(c). Then in 1992, Congress further empowered the Court to create rules "to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under" under § 1292. *Id.* § 1292(e). Since the enactment of these statutes, the Court has suggested that "further avenue[s] for immediate appeal of" rulings that fall outside of current Supreme Court precedent should usually "be furnished . . . through rulemaking" by the Court. *Mohawk*, 558 U.S. at 114. *Accord Swint*, 514 U.S. at 48; *Cunningham v. Hamilton County*, 527 U.S. 198, 210 (1999); *Microsoft Corp. v. Baker*, 582 U.S. 23, 39–40 (2017).

## II

This background informs my concern about treating the denial of state-law immunities as immediately appealable. True, our court has long exercised interlocutory appellate jurisdiction over orders denying certain state-law immunities. *See Sorey v. Kellett*, 849 F.2d 960, 961 (5th Cir. 1988). But that precedent is ripe for reconsideration.

## A

There are three straightforward reasons why the collateral-order doctrine should not extend to the denial of state-law immunities.

No. 24-10369

*First*, we have repeatedly held that States cannot "enlarge or contract federal jurisdiction." *Anthology, Inc. v. Tarrant Cnty. Coll. Dist.*, 136 F.4th 549, 553 (5th Cir. 2025) (quoting *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 298 (5th Cir. 2021)). That is a job the Constitution leaves exclusively to the American people's representatives. *See ibid.* (citing *Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850)). Extending the collateral-order doctrine to state-law immunities is in tension with this basic principle. Why? It essentially allows States to control our jurisdiction. If a State recognizes an immunity from suit, we have appellate jurisdiction; if a State treats the immunity as one from liability, we lack appellate jurisdiction. That is worrisome, to say the least.

*Second*, the Supreme Court has never held that state-law immunities trigger the collateral-order doctrine. *See* Adam Reed Moore, *A Textualist Defense of a New Collateral Order Doctrine*, 99 N.D. L. Rev. Reflection 1, 9 (2023) (listing the immunities from suit the Court has recognized as immediately appealable, none of which derive from state law). Nor has the Court enacted a rule permitting immediate appeal of state-law immunities. The Court has indicated a general unwillingness to expand the class of collateral orders. *See, e.g.*, *Mohawk*, 558 U.S. at 113–14. And it is hard to imagine that state-law immunities, which effectively allow States to define our appellate jurisdiction, overcome this skepticism.

*Third*, the Supreme Court has indicated that only rights resting on an "explicit" *federal* "statutory or constitutional guarantee" are sufficient. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989); *see also Digital Equip.*, 511 U.S. at 874, 880 n.8.[1] Obviously, state-law immunities do

---

[1] A classic example is the set of immunities afforded to the President, who has a "unique position in the constitutional scheme." *Trump v. United States*, 603 U.S. 593, 635–37 (2024) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982)). As "the only person who

not derive from a federal statute or the federal constitution. So they do not justify "piecemeal, prejudgment appeals." *Mohawk*, 558 U.S. at 106.

We have no basis for saying that the denial of a state-law immunity justifies immediate appeal under the Supreme Court's current doctrine.[2]

## B

So how has our precedent addressed these concerns? Like the proverbial ostrich with its head in the sand, our cases have responded to precisely zero of them. Instead, they have offered the following argument.

P1: Denials of immunities from suit are collateral orders.

P2: State law defines whether a state-recognized immunity is from suit or liability.

∴ When state law defines an immunity as one from suit, the denial of such immunity is immediately appealable under the collateral-order doctrine.

*See, e.g.*, *Sorey*, 849 F.2d at 961–63; *see ante*, at 4–5.

Both premises are doubtful.

Start with the first premise. Not all so-called "immunities from suit" qualify for immediate appeal. Under Supreme Court precedent, "only some" immunities from suit warrant collateral-order status: "[I]t is not mere

---

alone composes a branch of government," *id.* at 610 (quotation omitted); *see also id.* at 639 ("[U]nlike anyone else, the President is a branch of government."), the President is granted special "[s]olicitude" in seeking "immediate appellate review," *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *12 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting).

[2] My concerns are especially pronounced in this case. The only issue in this appeal is the denial of a state-law immunity. But the only reason this claim can be in federal court at all is because of the federal claims *not* in this appeal. *See* 28 U.S.C. § 1367.

No. 24-10369

avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts." *Will*, 546 U.S. at 351, 353; *see also Digital Equip.*, 511 U.S. at 877, 884 (holding that an alleged immunity from suit was not a collateral order because it did "not rise to the level of importance needed for recognition under § 1291"). Thus, "the *only* time a claimed right not to stand trial will justify immediate appellate review under *Cohen* is when a statutory or constitutional provision guarantees that claimed right." *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1295–96 (10th Cir. 2011) (Gorsuch, J.) (quotation omitted); *accord Wampler*, 624 F.3d at 1335–36.[3]

Now consider the second premise. Regardless of how States characterize their immunities—whether from suit or liability—federal appellate courts have a duty to decide for themselves how a right is characterized for purposes of the collateral-order doctrine. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 201 (1988). The Supreme Court has "acknowledged that virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial'" or an immunity from suit. *Digital Equip.*, 511 U.S. at 873. So because "there is no single, 'obviously correct way to characterize' an asserted right," the Court has "held that § 1291 requires *courts of appeals* to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Ibid.* (emphasis added) (quoting *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 500 (1989)). In other words, it is *our* duty to determine if some right is a right not to be tried. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 524–25 (1988); *cf. Anthology*, 136 F.4th at 553 (explaining that federal courts are not

---

[3] To make matters worse, in some States, a denial of certain state-law immunities is not immediately appealable. *See, e.g.*, *Sorey*, 849 F.2d at 962. If a particular state-law immunity is not important enough for the State's own courts to hear an immediate appeal, it cannot be of such overwhelming importance that it demands immediate appeal in federal court. *But see id.* at 962–63.

No. 24-10369

always bound by how state courts "treat their own state-law immunities"). Our precedents in this area have shirked that duty. At an appropriate time, we should reconsider them.